

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NOS. 2-07-034-CR
### 2-07-035-CR
### 2-07-036-CR

ROBERT DREW STEPHENSON                                   APPELLANT

V.

THE STATE OF TEXAS                                           STATE

------------

FROM THE 213TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

Appellant Robert Drew Stephenson appeals his convictions for retaliation, aggravated kidnapping, and aggravated assault.  We affirm.

### Introduction

Appellant's ex-girlfriend, Lisa Cleveland, claimed that appellant abducted her on March 5, 2006, and confined her until she escaped on March 24, 2006.

---

[1] *See* TEX. R. APP. P. 47.4.

During the course of the abduction, appellant burned Cleveland on the back with a torch and locked her in his grandmother's old trunk. Although the pair left appellant's house on several occasions, Cleveland did not seek help or escape because of appellant's threats.

Following a three-day trial, a jury convicted appellant of retaliation, aggravated kidnapping, and aggravated assault, and it set punishment at ten years', life, and twenty years' imprisonment, respectively. The trial court sentenced appellant in accordance with the jury's verdict and ordered the sentences to run concurrently.

## Motion to Withdraw

In his first issue, appellant contends that the trial court erred by denying his trial counsel's motion to withdraw and refusing to appoint different counsel.

The right to counsel afforded an indigent defendant by the Sixth Amendment may not be manipulated to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice.[2] A defendant does not have the right to his own choice of appointed counsel, but there are circumstances in which a defendant may be entitled to a change of counsel.[3]

---

[2] *See Hubbard v. State*, 739 S.W.2d 341, 344 (Tex. Crim. App. 1987).

[3] *Garner v. State*, 864 S.W.2d 92, 98 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd).

2

A defendant must bring the matter to the trial court's attention and must carry the burden of proving he is entitled to new counsel.[4] We review a trial court's denial of an attorney's motion to withdraw for an abuse of discretion, assessing the ruling in light of the information before the trial court at the time.[5]

When a possible conflict of interest is brought to the trial court's attention, the court must take adequate steps to ascertain whether the risk of the conflict is too remote to warrant remedial action.[6] A conclusory allegation of a conflict of interest, however, has been held to be insufficient to carry the defendant's burden.[7]

---

[4] *Malcolm v. State*, 628 S.W.2d 790, 791 (Tex. Crim. App. [Panel Op.] 1982); *Webb v. State*, 533 S.W.2d 780, 784 n.3 (Tex. Crim. App. 1976).

[5] *King v. State*, 29 S.W.3d 556, 566 (Tex. Crim. App. 2000); *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000); *Williams v. State*, 154 S.W.3d 800, 802 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd).

[6] *Holloway v. Arkansas*, 435 U.S. 475, 484–87, 98 S. Ct. 1173, 1178–80 (1978) (holding that trial court erred in not investigating counsel's assertion of conflict of interest based on multiple representation); *Lerma v. State*, 679 S.W.2d 488, 492–93, 497 (Tex. Crim. App. [Panel Op.] 1982) (op. and op. on reh'g) (presuming conflict of interest and harm, and reversing and remanding for new trial, where trial court knew or should have known of potential conflict of interest but failed to hold hearing); *see also Dunn v. State*, 819 S.W.2d 510, 519 (Tex. Crim. App. 1991) (declining to limit rule to conflicts of interest based on representation of co-defendants), *cert. denied*, 506 U.S. 834 (1992).

[7] *See Calloway v. State*, 699 S.W.2d 824, 830–31 (Tex. Crim. App. 1985) (finding no error where trial counsel did not elaborate on his claim of

Appellant's trial counsel filed a motion to withdraw on December 11, 2006, citing a conflict of interest with appellant.[8]  The trial court heard the motion on January 8, 2007, three weeks before trial.  At the brief hearing, trial counsel stated only,

> In each of these file numbers, I have heretofore filed a motion to withdraw stating that a conflict of interest has arisen between myself and [appellant].
>
> I would state for the record that I am constrained in what I can explain to the Court about this.  There are certain mandates placed on me as a private attorney which restrict the amount of information which I can provide the Court at this time.  I would just ask the Court to understand that I seriously believe there is a conflict of interest and I do not see how I can continue to represent [appellant].[9]

conflict of interest); *Thompson v. State*, 94 S.W.3d 11, 20–22 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) (holding no error where attorney stated conflict arose from representation of another private client but refused to give details); *Harrell v. State*, No. 12-00-00356-CR, 2002 WL 31656213, at *3 (Tex. App.—Tyler Nov. 26, 2002, pet. ref'd) (not designated for publication) (holding trial court was not obligated to conduct further inquiry following mere assertion of a conflict of interest); *Frazier v. State*, 15 S.W.3d 263, 265–66 (Tex. App.—Waco 2000, no pet.) (finding no abuse of discretion to deny post-conviction motion to withdraw that alleged conflict of interest where trial counsel did not offer any specific facts).

[8] Appellant also filed several pro se documents complaining of his trial counsel.  On December 4, 7, and 11, 2006, appellant filed pro se declarations of conflict between attorney and client.  On December 7, 2006, he filed a motion to request appointed counsel.  On December 7, 2006, and January 29, 2007, appellant filed handwritten letters complaining of trial counsel.

[9] Appellant did not testify at the hearing but the trial court noted he "[shook] his head in the negative" after his attorney rested.

4

The trial court denied the motion without inquiry or explanation.

Here, trial counsel did not elaborate on the alleged conflict of interest.[10] Under the facts of this case, therefore, we hold that the trial court did not abuse its discretion by summarily denying trial counsel's motion to withdraw.[11] We overrule appellant's first issue.

## Double Jeopardy

In his third and fourth issues, appellant argues that his Fifth Amendment protection against double jeopardy was violated because his aggravated assault conviction is a lesser included offense of both his aggravated kidnapping and retaliation convictions. Appellant concedes that he did not raise a double jeopardy objection in the trial court.

Appellant has the burden to "preserve, in some fashion," a double jeopardy objection at or before the time the charge is submitted to the jury.[12] Because of the fundamental nature of double jeopardy, however, a double

---

[10] One of appellant's handwritten letters to the trial court (dated December 7, 2006) stated that Cleveland hired his trial counsel's law firm to defend her common law husband in another criminal matter. On appeal, however, appellant concedes that there is no indication that the trial court was aware of this document on the January 8 hearing.

[11] *See Calloway*, 699 S.W.2d at 830–31; *Thompson*, 94 S.W.3d at 20–22; *Harrell*, 2002 WL 31656213, at *3; *Frazier*, 15 S.W.3d at 265–66.

[12] *Gonzalez v. State*, 8 S.W.3d 640, 642 (Tex. Crim. App. 2000).

5

jeopardy claim may be raised for the first time on appeal when "the undisputed facts show that the double jeopardy violation is clearly apparent on the face of the record and when enforcement of usual rules of procedural default serves no legitimate state interests."[13] For the reasons discussed below, we hold that the alleged double jeopardy violations are not clearly apparent on the face of the record.

Appellant's double jeopardy complaints allege multiple punishments for the same offense.[14] A multiple punishment double jeopardy violation is clearly apparent on the face of the record when the record affirmatively shows multiple punishments resulting from the commission of a single act that violated two separate penal statutes, one of which is, on its face, subsumed in the other.[15]

To determine whether two convictions impose multiple punishments under the double jeopardy clause, we apply the "same elements" test articulated in *Blockburger v. United States*.[16] This test "inquires whether each

---

[13] *Id.* at 643.

[14] *See Langs v. State*, 183 S.W.3d 680, 685 (Tex. Crim. App. 2006).

[15] *See Perez v. State*, No. 02-06-00225-CR, 2007 WL 2744914, at *6 (Tex. App.—Fort Worth Sept. 20, 2007, pet. ref'd) (mem. op., not designated for publication).

[16] *Langs*, 183 S.W.3d at 685 (citing *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180 (1932)); *see also Garrison v. State*, Nos. 02-04-

6

offense contains an element not contained in the other; if not, they are the 'same offen[s]e' and double jeopardy bars additional punishment and successive prosecution."[17] The Texas Court of Criminal Appeals has held that, under *Blockburger*, we are to consider both the statutory elements and any additional nonstatutory allegations found in the charging instruments.[18]

We turn first to appellant's double jeopardy claim based on the aggravated kidnapping and aggravated assault convictions. The face of the record shows that appellant was indicted for aggravated kidnapping as follows:

> [Appellant], in the County of Tarrant and State [of Texas], on or about the 24th day of March 2006, did with the intent to inflict bodily injury on Lisa Cleveland or violate or abuse Lisa Cleveland sexually or terrorize Lisa Cleveland intentionally or knowingly abduct Lisa Cleveland by restraining Lisa Cleveland without consent by moving Lisa Cleveland from one place to another or confining Lisa Cleveland with the intent to prevent the liberation of Lisa Cleveland by secreting or holding Lisa Cleveland in a place Lisa Cleveland was not likely to be found or using or threatening to use deadly force, namely burning Lisa Cleveland with a deadly weapon, to wit: a torch, that in the manner of its use or intended use was capable of causing death or serious bodily injury.

---

00450-CR, 02-04-00451-CR, 2005 WL 1594258, at *6 (Tex. App.—Fort Worth July 7, 2005, pet. ref'd) (not designated for publication) (applying *Blockburger* to determine whether error was clearly apparent on face of the record).

[17] *United States v. Dixon*, 509 U.S. 688, 696, 113 S. Ct. 2849, 2856 (1993).

[18] *See Parrish v. State*, 869 S.W.2d 352, 354 (Tex. Crim. App. 1994).

The jury charge on aggravated kidnapping tracked the indictment.

The indictment for aggravated assault stated,

[Appellant], in the County of Tarrant and State [of Texas], on or about the 24th day of March 2006, did intentionally or knowingly cause bodily injury to Lisa Cleveland by burning Lisa Cleveland with a torch and [appellant] did use or exhibit a deadly weapon during the commission of the assault, to-wit: a torch, that in the manner of its use or intended use was capable of causing death or serious bodily injury.

The jury charge on aggravated assault also tracked the indictment.

A close comparison of the two charged offenses shows that they are based not on the commission of a single act, but rather on different acts that include a common element. The aggravated kidnapping charge required the State to prove not only that appellant abducted Cleveland, but also that he did so with the intent to inflict bodily injury on her, violate her, abuse her sexually, or terrorize her; or that he used or exhibited a deadly weapon.[19] To prove that appellant committed aggravated assault, as charged, it was necessary for the State to prove that appellant intentionally or knowingly caused bodily injury to Cleveland by using or exhibiting a deadly weapon.[20] Therefore, no double jeopardy violation clearly appears on the face of the record in this case because

---

[19] *See* TEX. PENAL CODE ANN. § 20.04(a)(4)–(5), (b) (Vernon 2003).

[20] *See id.* §§ 22.01, 22.02(a)(2) (Vernon 2003 & Supp. 2007).

8

the record does not affirmatively show that the punishments for aggravated kidnapping and aggravated assault resulted from the commission of a single act.

We turn next to appellant's argument that his double jeopardy rights were violated by his convictions for both aggravated assault and retaliation. The offense of retaliation required the State to prove that appellant intentionally or knowingly harmed Cleveland by an unlawful act (burning her with a torch) in retaliation for or on account of the service or status of Cleveland as a person who has reported the occurrence of a crime.[21] The offense of aggravated assault, on the other hand, required the State to prove that appellant intentionally or knowingly caused bodily injury to Cleveland and used or exhibited a deadly weapon (a torch) during the commission of the assault.[22]

Although both offenses are based on the commission of a single act—burning Cleveland with a torch—the State was required to prove one or more different elements to obtain a conviction for each offense. Retaliation required the State to prove that appellant harmed Cleveland in retaliation for or on account of reporting a crime, whereas aggravated assault required the State

---

[21] *See id.* § 36.06(a)(1)(B) (Vernon 2003 & Supp. 2007).

[22] *See id.* §§ 22.01(a)(1), 22.02(a)(2).

to prove the torch was a deadly weapon.[23] Thus, a double jeopardy violation does not clearly appear on the face of the record because the record does not affirmatively show that the offense of aggravated assault is subsumed within the offense of retaliation.[24]

Accordingly, because appellant's alleged double jeopardy violations are not clearly apparent on the face of the record, we cannot address them. We overrule appellant's third and fourth issues.

**Improper Argument**

---

[23] *See Girdy v. State*, 213 S.W.3d 315, 319 (Tex. Crim. App. 2006) (holding that if the State, in proving the elements of one charged offense, also *necessarily* proves another charged offense, then that other offense is a lesser included offense and multiple punishments are barred); *Landry v. State*, 227 S.W.3d 380, 382 (Tex. App.—Texarkana 2007, no pet.) (holding that, where State did not allege use of a deadly weapon in capital murder indictment, aggravated assault by the use or exhibition of a deadly weapon contained an additional element and was, therefore, not a lesser included offense of capital murder as alleged); *Rodriguez v. State*, No. 04-04-00230-CR, 2005 WL 899963, at *2 (Tex. App.—San Antonio Apr. 20, 2005, pet. ref'd) (mem. op., not designated for publication) ("Proof of the use or exhibition of a deadly weapon is an essential element of the offense of aggravated assault as it was charged in the indictment [under penal code section 22.02(a)(2)].").

[24] *See* TEX. PENAL CODE ANN. §§ 22.01(a)(1), 22.02(a)(2), 36.06(a)(1)(B); *cf. Jacob v. State*, 892 S.W.2d 905, 909 (Tex. Crim. App. 1995) (holding that "because evidence showing a completed aggravated assault is not part of the facts legally required to show burglary with intent to commit aggravated assault . . . aggravated assault is not a lesser included offense of burglary under Section 30.02(a)(1)").

In his fifth issue, appellant argues that the prosecutor struck at him over the shoulders of his counsel in the State's closing argument. To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion.[25] Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule.[26]

Appellant concedes that he did not preserve error as to the allegedly improper comment. We, therefore, overrule his fifth issue.[27]

### Ineffective Assistance of Counsel

In his second and sixth issues, appellant argues that his trial counsel rendered ineffective assistance by inadequately presenting the motion to withdraw and failing to preserve his double jeopardy and improper closing argument complaints.

---

[25] TEX. R. APP. P. 33.1(a)(1); *Mosley v. State*, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999).

[26] TEX. R. APP. P. 33.1(a)(2); *Mendez v. State*, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004).

[27] *See Threadgill v. State*, 146 S.W.3d 654, 667 (Tex. Crim. App. 2004) (overruling appellant's improper argument point where appellant failed to preserve error).

11

To establish ineffective assistance of counsel, appellant must show by a preponderance of the evidence that his counsel's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different.[28] Review of counsel's representation is highly deferential, and the reviewing court indulges a strong presumption that counsel's conduct fell within a wide range of reasonable representation.[29]

A reviewing court will rarely be in a position on direct appeal to fairly evaluate the merits of an ineffective assistance claim.[30] In the majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions.[31] To overcome the presumption of reasonable professional assistance, any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the

---

[28] *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *Mallett v. State*, 65 S.W.3d 59, 62–63 (Tex. Crim. App. 2001); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).

[29] *See Salinas*, 163 S.W.3d at 740; *Mallett*, 65 S.W.3d at 63.

[30] *Thompson*, 9 S.W.3d at 813–14.

[31] *Salinas*, 163 S.W.3d at 740 (quoting *Mallett*, 65 S.W.3d at 63).

alleged ineffectiveness.[32]  It is not appropriate for an appellate court simply to infer ineffective assistance based upon unclear portions of the record.[33]

Regarding trial counsel's performance in presenting the motion to withdraw, the record does not contain counsel's reasons for failing to elaborate on the alleged conflict of interest or for failing to call appellant to allow him to elaborate.  It appears that trial counsel was guarded in his explanation to the trial court because he believed professional ethical rules prevented him from discussing the possible conflict of interest in greater detail.

Trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective even where the incident reasonably raises questions as to certain trial strategy decisions.[34]  Here, the record suggests that trial counsel apprised the trial court, both in writing and orally, of a possible conflict of interest, while also attempting to honor ethical obligations.  In the absence of evidence of counsel's reasoning, the record is

---

[32] *Id.* (quoting *Thompson*, 9 S.W.3d at 813).

[33] *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007).

[34] *See Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003); *Bone v. State*, 77 S.W.3d 828, 836 (Tex. Crim. App. 2002).

insufficient to overcome the presumption that trial counsel's conduct falls within the wide range of professional, competent assistance.[35]

Appellant next argues trial counsel was ineffective in failing to preserve his double jeopardy arguments. While in some cases a "single egregious error" may constitute ineffective assistance of counsel,[36] an isolated failure to object generally does not constitute ineffective assistance.[37] Again, the record is silent on trial counsel's reasons for not objecting to the charge based on double jeopardy. Trial counsel may have considered the charge and concluded that double jeopardy was not violated, and, as we have already determined, a double jeopardy violation is not clearly apparent on the face of the record. Or trial counsel may have decided not to object for reasons of trial strategy. We hold that appellant failed to rebut the presumption that counsel acted reasonably.[38]

---

[35] *See Freeman v. State*, 125 S.W.3d 505, 506–07 (Tex. Crim. App. 2003); *Rylander*, 101 S.W.3d at 110–11; *Bone*, 77 S.W.3d at 836–37; *Thompson*, 9 S.W.3d at 814.

[36] *E.g.*, *Andrews v. State*, 159 S.W.3d 98, 103 (Tex. Crim. App. 2005) (holding that record was sufficient to allow decision on merits and that counsel rendered ineffective assistance by failing to object to prosecutor's misstatement of the law).

[37] *See Scheanette v. State*, 144 S.W.3d 503, 510 (Tex. Crim. App. 2004); *Ingham v. State*, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984).

[38] *See Thompson*, 9 S.W.3d at 814.

14

Finally, appellant complains of trial counsel's failure to object to the prosecutor's statement in closing argument. In rebuttal argument, the prosecutor stated,

> Ladies and gentlemen, I guess when you are sitting next to a guilty man, you will say anything. What is the Defense here? Was this rough sex or was it [appellant] spilling the gas out of this canister on Lisa Cleveland?
>
> See, when you are sitting next to a guilty man, you have got to throw as much stuff against the wall and see what will stick. But ladies and gentlemen, I implore you to look at the facts . . . .

Again, an isolated failure to object generally does not constitute ineffective assistance.[39] In context, trial counsel may have believed that the argument merely referenced the presence of multiple defensive theories and did not impugn his character.[40] Appellant has failed to rebut the presumption that counsel acted reasonably.[41]

For all of these reasons, we overrule appellant's second and sixth issues.

**Roxanne Hayes's Testimony**

---

[39] *See Scheanette*, 144 S.W.3d at 510; *Ingham*, 679 S.W.2d at 509.

[40] *See Guy v. State*, 160 S.W.3d 606, 617 (Tex. App.—Fort Worth 2005, pet. ref'd) (holding that "a prosecutor risks improperly striking at a defendant over the shoulder of counsel when the argument refers to defense counsel personally and when the argument explicitly impugns defense counsel's character").

[41] *See Thompson*, 9 S.W.3d at 814.

15

In his seventh issue, appellant argues that the trial court improperly admitted Roxanne Hayes's testimony relating an incident somewhat similar to Cleveland's allegations. Over appellant's objection, Hayes testified that she had dated appellant from 1997 through 1999, he had assaulted her, and she had also felt "confined" in his house. Appellant also told Hayes that he would retaliate against her and had locked her in the same trunk that Cleveland identified. Hayes further testified that, although she left the house with appellant, she did not feel that she could leave because he had threatened to kill her.

At trial, appellant objected to this testimony based on Texas Rules of Evidence 402 and 403.[42] We review the trial court's rulings on both of these grounds for an abuse of discretion.[43]

Rule 402 provides, "All relevant evidence is admissible, except as otherwise provided . . . . Evidence which is not relevant is inadmissible."[44] Evidence is relevant if it has any tendency to make the existence of any fact

---

[42] On appeal, he also briefs Rule 404(a) and (b). We consider, however, only those grounds that appellant advanced in the trial court. TEX. R. APP. P. 33.1; *see Mendez*, 138 S.W.3d at 341–42.

[43] *Wyatt v. State*, 23 S.W.3d 18, 26 (Tex. Crim. App. 2000) (Rule 403); *Brown v. State*, 96 S.W.3d 508, 511 (Tex. App.—Austin 2002, no pet.) (Rule 401).

[44] TEX. R. EVID. 402.

16

that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.[45]

The fact that appellant also locked Hayes in the same trunk in the past made it more probable that he had done the same to Cleveland. Further, Hayes's testimony that she did not feel free to leave appellant while they were in public together, because of his threats, tended to rebut appellant's defense that Cleveland stayed with him voluntarily. Hayes's testimony was, therefore, relevant, and the trial court did not abuse its discretion in admitting the evidence over his Rule 402 objection.

Rule 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence."[46] The Rule 403 balancing test includes the following factors:

> (1) how compellingly the extraneous offense evidence serves to make a fact of consequence more or less probable—a factor which is related to the strength of the evidence presented by the proponent to show the defendant in fact committed the extraneous offense;

---

[45] TEX. R. EVID. 401.

[46] TEX. R. EVID. 403.

(2) the potential the other offense evidence has to impress the jury in some irrational but nevertheless indelible way;

(3) the time the proponent will need to develop the evidence, during which the jury will be distracted from consideration of the indicted offense;

(4) the force of the proponent's need for this evidence to prove a fact of consequence, i.e., does the proponent have other probative evidence available to him to help establish this fact, and is this fact related to an issue in dispute.[47]

The first and third factors weigh heavily in favor of admissibility. First, Hayes's testimony was compelling. Cleveland claimed that appellant abducted her, yet several witnesses claimed to have seen appellant and Cleveland together in public during the relevant time. Hayes's testimony supported Cleveland's claim that she did not leave, even when in public, because of appellant's threats. Further, Hayes's entire testimony before the jury comprises four pages in the record; thus, the jury was drawn away from the indicted offenses only briefly.

The second and fourth factors are neutral. Regarding the second factor, the jury had already heard Cleveland's allegations of the abuse suffered at appellant's hands; Hayes's testimony was less detailed and no worse by comparison. Hayes's testimony, however, did reveal that appellant had abducted her in the late nineties, which may have suggested that appellant had

---

[47] *Wyatt*, 23 S.W.3d at 26 (internal quotation marks omitted).

18

a chronic pattern of abducting and abusing women.  Regarding the fourth

factor, the question of whether Cleveland was abducted or stayed voluntarily

was disputed at trial; thus, Hayes's testimony was important to the State.  The

State, however, did have some other evidence to prove abduction—Cleveland's

testimony, which was corroborated to some extent by that of her daughter and

son.[48]

Because the first and third factors weigh heavily in favor of admissibility,

and the second and fourth factors are neutral, we hold that the trial court did

not abuse its discretion in concluding that the danger of unfair prejudice did not

substantially outweigh the probative value of this evidence.

For all of these reasons, we overrule appellant's seventh issue.

## Factual Sufficiency

In his eighth, ninth, and tenth issues, appellant challenges the factual

sufficiency of the evidence to support his three convictions.

---

[48] Cleveland's daughter testified that her mother told her on March 24 that appellant had abused her and would not let her leave.  Further, her son testified that appellant denied knowing where Cleveland was one week after she went missing, although appellant later admitted that she was with him during that time.

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party.[49] We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the fact-finder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the fact-finder's determination is manifestly unjust.[50] To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, though legally sufficient, contradicts the verdict.[51]

In determining whether the evidence is factually insufficient to support a conviction that is nevertheless supported by legally sufficient evidence, it is not enough that this court "harbor a subjective level of reasonable doubt to overturn [the] conviction."[52] We cannot conclude that a conviction is clearly wrong or manifestly unjust simply because we would have decided differently

---

[49] *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); *Drichas v. State*, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005).

[50] *Watson*, 204 S.W.3d at 414–15, 417; *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).

[51] *Watson*, 204 S.W.3d at 417.

[52] *Id*.

than the jury or because we disagree with the jury's resolution of a conflict in the evidence.[53] We may not simply substitute our judgment for the fact-finder's.[54] Unless the record clearly reveals that a different result is appropriate, we must defer to the jury's determination of the weight to be given contradictory testimonial evidence because resolution of the conflict "often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered."[55] Thus, we must give due deference to the fact-finder's determinations, "particularly those determinations concerning the weight and credibility of the evidence."[56]

The evidence at trial showed as follows:

Appellant and Cleveland were drug addicts who regularly used methamphetamine during the course of their five-year relationship. In December 2005, appellant assaulted Cleveland and was sent to jail for some time. On March 5, 2006, in violation of a protective order, appellant appeared

---

[53] *Id*.

[54] *Johnson*, 23 S.W.3d at 12; *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).

[55] *Johnson*, 23 S.W.3d at 8.

[56] *Id*. at 9.

at Cleveland's house and persuaded her to accompany him to his house to do drugs and have sex, promising that he would "bring [her] right back."

Cleveland testified that, when they arrived at appellant's house, they took drugs and began to have sex, but appellant soon became angry. Appellant said Cleveland could not be trusted because she filed charges against him that caused him to be sent to jail, he was not going to go back to jail, and he believed that she had been having sex with other men. Appellant tied Cleveland's hands and feet, put a sock in her mouth, attached a strap to her feet, and hoisted her from the rafters of the bedroom so that only her shoulder and head were touching the mattress. While Cleveland was hanging upside down, appellant burned her back three times with a torch. After cutting her down from the rafters, appellant twice poured "something similar to Drano" on Cleveland's burns.[57]

The next day, appellant panicked when he realized the extent of Cleveland's injuries. Appellant locked Cleveland in his grandmother's old trunk, again saying she was not to be trusted. Appellant locked Cleveland in the trunk

---

[57] When officers later searched appellant's home, they found, among other items, "a gas cannister typically used with a portable torch" (although the torch component was not found), straps attached to exposed rafters in the bedroom, a pipe, and "a plastic bag containing a drain flow bottle." Detective Brian Jamison testified that the torch would be considered a deadly weapon if used on a person.

on several later occasions as well, sometimes dropping burning pieces of paper, urine, and feces inside. Outside of the trunk, appellant poured acetone on Cleveland; threw matches at her; hit, kicked, and tripped her; put needles under her toenails; and beat her hands and feet with a pipe. Further, when Cleveland's son came looking for her a week after she went missing, appellant denied knowing where she was.

Cleveland said that appellant locked her inside his house, and there was evidence that the front door was difficult to open because it could be unlocked only by key, from the outside, and the back door was nailed shut. During this confinement, appellant said that Cleveland would never see her kids again and that he would burn down the house with her children in it. Cleveland did not attempt to leave because she was afraid of appellant's threats, even though she and appellant left the house together more than once. Several witnesses who saw appellant and Cleveland together around the time of the kidnapping testified that Cleveland did not seek their help or appear to be held against her will. Many of these witnesses, however, were unsure of the exact date that they had seen Cleveland, and it might have been before the kidnapping.

On March 24, 2006, while appellant appeared to be asleep with another woman, Cleveland found appellant's keys, unlocked the front door, and drove

appellant's car to a friend's house. The friend and Cleveland's daughter observed several injuries on Cleveland and insisted that she go to the hospital.

Brenda Lobley, an emergency room doctor at Harris Methodist Fort Worth Hospital, testified that Cleveland presented on March 24, 2006, with healing burns on her back and buttocks, bruises, abrasions, healing lacerations to the scalp, an ankle fracture, and three relatively new rib fractures. Dr. Lobley opined that Cleveland's injuries constituted "serious bodily injury." Dr. Lobley, however, did not notice anything consistent with acid being poured on Cleveland's burn and said Cleveland reported that she had been "locked in the trunk of a car" for twenty days.

Appellant testified in his own defense. He admitted assaulting Cleveland in December but denied being upset with her for turning him in for that offense. Appellant claimed that he accidentally burned Cleveland while trying to warm himself and Cleveland with the torch during sex. He further asserted that Cleveland tripped over loose boards in his house, causing her broken ribs. Appellant denied abducting, assaulting, and retaliating against Cleveland, and he claimed she was angry with him only because he was having sex and doing

24

drugs with another woman.[58] He also denied locking Cleveland or Hayes in his grandmother's trunk.

Appellant contends that Cleveland's testimony was not credible. Cleveland admitted that she had done drugs a few days before trial, and several witnesses—many of whom were related to appellant—testified that Cleveland had a bad reputation for telling the truth. Credibility determinations, however, are the sole province of the jury.[59]

Applying the appropriate standard, we conclude that the evidence is factually sufficient to prove that appellant committed retaliation, aggravated kidnapping, and aggravated assault as charged. Accordingly, we overrule appellant's eighth, ninth, and tenth issues.

### Conclusion

Having overruled all of appellant's issues, we affirm the trial court's judgment.

PER CURIAM

PANEL F: CAYCE, C.J.; WALKER and MCCOY, JJ.

---

[58] Cleveland admitted that she was mad that appellant was ignoring her immediately before her escape.

[59] *E.g.*, *Margraves v. State*, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000) (holding that the jury is the exclusive judge of the credibility of witnesses and the weight to be given their testimony).

PUBLISH

DELIVERED:  March 20, 2008