COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH


NO. 2-08-439-CR

TRENTON DEWAYNE PICKETT                                                          APPELLANT

V.

THE STATE OF TEXAS                                                                        STATE

------------

FROM THE 97TH DISTRICT COURT OF MONTAGUE COUNTY

------------

**MEMORANDUM OPINION**[1]

------------

**Introduction**

Appellant Trenton Dewayne Pickett appeals his conviction for possessing more than four but less than two hundred grams of methamphetamine. *See* Tex. Health & Safety Code Ann. §§ 481.102(6), 481.115(a), (d) (Vernon Supp. 2009). In one issue, he contends that the trial court violated his

---

[1] *See* Tex. R. App. P. 47.4.

constitutional rights by failing to appoint counsel different than the counsel it originally appointed, denying him an opportunity to retain different counsel, and disallowing him to represent himself. We affirm.

## Background Facts

Just before ten o'clock on the morning of November 10, 2006, Bowie Police Department Officer Kent Stagg saw Pickett as he was sleeping or was unconscious in a pickup. Officer Stagg knocked on the pickup's door frame, and Pickett awoke and began shaking and sweating.

As Pickett stepped out of the pickup with items in his hands, Officer Stagg saw a glass pipe fall on the pickup's floor. Because Officer Stagg recognized the pipe as drug paraphernalia, he asked Pickett to drop the items he was carrying into the pickup's bed, and he arrested Pickett. After the arrest, Officer Stagg searched the items that Pickett had dropped into the pickup's bed. Inside a ball of tape, Officer Stagg found crystalized methamphetamine inside a vile and a baggie.

A Montague County grand jury indicted Pickett for possessing the methamphetamine. In May 2007, the trial court appointed Tim Cole, a former district attorney, to represent Pickett. After the parties filed various pretrial documents, Pickett's trial began in October 2008.

Pickett pled not guilty, but the jury found him guilty.  After the State presented evidence regarding Pickett's previous drug-related felony conviction and his mother briefly testified, the jury assessed punishment at twenty years' confinement.  Pickett timely filed his notice of appeal.

**Pickett's Choice of Counsel and the Right of Self-Representation**

On March 5, 2008, a date that Pickett's case was set for trial, the following exchange occurred between Pickett, Cole, and the trial judge after Pickett and Cole expressed their disagreement about whether Pickett should accept the State's plea bargain offer:

> [MR. COLE]:  . . . [W]e have a fundamental disagreement about the strategy that you should proceed with in this case, do we not?
>
> [THE DEFENDANT]:  Yes, we do.
>
> [MR. COLE]:  In fact, in the very beginning, you had a fundamental mistrust of me representing you because I was the prosecutor who sent you to prison in the last case you were convicted in; is that true?
>
> [THE DEFENDANT]:  That's correct.
>
> [MR. COLE]:  Now, are you wanting to tell the Judge something about that -- your feelings with regard to that and request that he give you a new attorney or give you time to hire an attorney?
>
> [THE DEFENDANT]:  Yes, I would like to.
>
> [MR. COLE]:  Would you explain that to him?

3

[THE DEFENDANT]: I don't feel that he's representing me the way that I need to be represented and I don't trust him beings he was the prosecutor in a case back in '98 that I made a plea on.

. . . .

[MR. COLE]: Do you have the ability to hire an attorney?

[THE DEFENDANT]: I should have now. I've been working.

[MR. COLE]: So you're telling the Judge that you want to hire your own attorney?

[THE DEFENDANT]: Yes, I do.

. . . .

[THE COURT]: How long have you had the ability to hire another attorney?

[THE DEFENDANT]: About a week and a half.

[THE COURT]: And the reason you haven't hired an attorney as of this date then is, what?

[THE DEFENDANT]: I still haven't made it to a scrap yard with the cars that I've gathered up, but I have sold them to him.

[MR. COLE]: Judge, just for your own knowledge, I -- Mr. Pickett has been aware that this was the top case on the jury docket since last week. I made it very clear to him last week. We reviewed the evidence, in detail, in this case and he remains deeply mistrustful of me and everything that I tell him. There is a deep, deep mistrust from him towards me and I think it stems from the fact that I was, in deed [sic], the district attorney in his prior case. So having said that, it's up to, obviously, the Judge's discretion as to whether you allow me out of the case at this point, but it's clear there's going to continue to be a problem between

4

myself and Mr. Pickett throughout the trial.  So with that, I'll leave it to your discretion.

[THE COURT]:  Okay.  And what attorney do you want to hire, Mr. Pickett?

[THE DEFENDANT]:  I'm not sure.  He's out of Wichita. A friend of mine used him.

[THE COURT]:  Who is it?

[THE DEFENDANT]:  I'm not sure of his name yet, but I will have one.

. . . .

[THE COURT]:  Okay.  All right.  I'm going to let you hire an attorney.  But if you don't hire an attorney, Mr. Cole [has] still been appointed to represent you.  You need to hire the attorney. You need to hire them and have them notify both the district attorney and the district clerk that they're representing you. And you are set for trial -- you don't have to be back next week, but you're ordered to be here at 9 a.m. on April 22, 2008, for jury trial and you need to let your lawyer know when you're going to be here.
And let me explain this:  If you don't hire a lawyer, you're still ordered to be here on April the 22nd and Mr. Cole will be representing you at the jury trial then.

[THE DEFENDANT]:  Yes, sir.

[THE COURT]:  Any questions about that?

[THE DEFENDANT]:  No, sir.

More than seven months later, after Pickett failed to reappear for his jury trial

and forfeited his bond, the following colloquy took place:

5

[THE COURT]:  All right.  Mr. Pickett, we're on the record.  Now, is there something you want to say?

[THE DEFENDANT]:  Yes, sir.  I still don't wish to have Tim Cole represent me here as I did in the past for the same reasons.  He hasn't done anything towards my defense but ask me how many years I want.  And he was the prosecuting attorney in a previous conviction of mine on a marijuana charge in '98.  And if I'm put on the stand and I'm going to be questioned about my past record comes in light, which I want it to, he'll be a witness to my defense.  But I don't trust him.  He [has not] done anything to me and I have begged with the Court to let me have a different defense attorney.

[THE COURT]:  Mr. Pickett, let me ask you a couple questions.  When is the last time -- the last time you were in court was on March the 5th and you said you were going to hire an attorney?

[THE DEFENDANT]:  Yes, sir.

[THE COURT]:  It is now October the 21st.  Have you hired an attorney?

[THE DEFENDANT]:  The one I was going to hire increased his price on me yesterday.

. . . .

[THE COURT]:  When is the last time you talked to [the attorney who Pickett was going to hire] before yesterday?

[THE DEFENDANT]:  March 15.

[THE COURT]:  Let's see, Mr. Pickett, you also failed to appear for the jury trials that were set April 22nd.  You failed to appear May 6th.  You failed to appear May 13th.  And you -- so --

[THE DEFENDANT]:  I didn't know nothing about May 13th.

6

[THE COURT]: Oh, yeah, you did because you had -- when you got the March jury notice, it also had the subsequent dates in there too. . . . Now, Mr. Pickett, you tell me one reason why you've had since March 5th to hire an attorney and you haven't done it? Why? You haven't taken any steps -- actually, you didn't take any steps until you were rearrested. The only reason you're here today is because you were rearrested and in jail; is that correct?

[THE DEFENDANT]: Yes, sir.

. . . .

[THE COURT]: Mr. Pickett, do you remember what I told you back in March?

[THE DEFENDANT]: Yes, sir.

[THE COURT]: Hire an attorney or your appointed counsel is going to represent you.

[THE DEFENDANT]: Yes, sir. And I honestly thought I had the means to hire that attorney until yesterday when he told me he increased his price $10,000. The only person I've had since I've been locked up to be able to help me has been my mother and she's been sick.

. . . .

[THE COURT]: And you've criticized Mr. Cole about not preparing to defend you in the case; is that correct?

[THE DEFENDANT]: Yes, sir.

[THE COURT]: How many times since March have you contacted Mr. Cole to give him any information about your case?

7

[THE DEFENDANT]: None, because I haven't wanted him as my attorney. I didn't want him. I didn't figure I needed to give him any information. . . .

. . . .

[THE COURT]: Well, Mr. Pickett, I'm afraid that a good deal of the problem you've appeared to have had here appear to be, maybe, of your own making. So I'm -- you've had six months to hire an attorney?

[THE DEFENDANT]: And, yes, sir, I have. But I wasn't --

[THE COURT]: And you haven't done it. And you've missed -- basically, skipped out on three jury weeks?

. . . .

[THE DEFENDANT]: And the reason being, sir, is because I didn't have the money at the time for another attorney and I didn't want him for my attorney.

[THE COURT]: I don't believe that -- well, nevertheless, we're going to go ahead and proceed to trial today. If the State would read the indictment.

[THE DEFENDANT]: May I ask, Your Honor, if I choose to represent myself how long I would have to prepare a defense?

[THE COURT]: About -- you've had six months. The jury panel is going to be coming in here in five minutes. You are not delaying the trial any longer, Mr. Pickett. You have been set three times. You have voluntarily absented yourself from the courtroom. And if you represent yourself, there are warnings I will go over with you, but we will proceed to trial today. And if you represent yourself, you will be held to the same standards as attorneys are. I will not be able to help you. Any objections have to have the same basis that they would if they were made by an attorney.

8

You will be held to the same standards as an attorney. It would put you at a significant disadvantage to represent yourself. . . .

　. . . .

[THE COURT]: . . . [I]f you represent yourself, that might be a mistake you made there too. I am trying to let you know that it is, generally, a significant problem -- let me back up. It is difficult to represent oneself in a case. Even if one is a lawyer, it is difficult to represent yourself in a case whether it is a civil case or a criminal case. And I want to point out something else to you that you may not know. The same day back in March that you didn't want Mr. Cole as an attorney, there was a Mr. Adams that had Mr. Cole as the attorney and didn't want him either. He went to trial and Mr. Cole got him a mistrial during the trial itself. I'm not saying it will happen in this case. I don't know. But just because somebody doesn't want somebody as their attorney is not an excuse for getting rid of a court-appointed attorney. And you have had time -- you have had time to hire an attorney.

. . . So is there anything else you want to put on the record then?

[THE DEFENDANT]: No, sir.

In the title of his only issue, Pickett contends that the trial court committed reversible error by "failing to conduct a thorough hearing on [his] request to have new counsel appointed, to have an opportunity to retain counsel, or to represent himself and by refusing to allow [him] to represent himself in the trial in contravention of [his] constitutional rights[.]" Thus, although the majority of Pickett's legal argument in his brief concerns the right of self-representation, we construe Pickett's issue as challenging (1) the trial court's denial of his request for more time to retain counsel, (2) the trial

9

court's refusal to appoint different counsel, and (3) the trial court's alleged denial of his right of self-representation.

**Denial of additional time to retain different counsel**

Pickett's request for more time to retain different counsel (which, of course, would have again delayed the trial's proceeding) and his appellate complaint involving the denial of that request is a challenge to the denial of a motion for a continuance. *See Coleman v. State*, 188 S.W.3d 708, 722–24 (Tex. App.—Tyler 2005, pet. ref'd) (construing an appellant's complaint that he did not want to go to trial until he was represented by an attorney of his choice as a challenge to the denial of a continuance), *cert. denied*, 549 U.S. 999 (2006). The denial of a motion for continuance is within the sound discretion of the trial court, and our review of the denial of the motion is limited to whether the trial court abused that discretion. *Renteria v. State*, 206 S.W.3d 689, 699 (Tex. Crim. App. 2006); *Janecka v. State*, 937 S.W.2d 456, 468 (Tex. Crim. App. 1996), *cert. denied*, 522 U.S. 825 (1997); *Williams v. State*, 172 S.W.3d 730, 733 (Tex. App.—Fort Worth 2005, pet. ref'd).

A defendant must show "specific prejudice to his defense" to establish that the trial court abused its discretion by refusing to grant a continuance. *Renteria*, 206 S.W.3d at 699; *Janecka*, 937 S.W.2d at 468. Examples of specific prejudice include unfair surprise, an inability to effectively

10

cross-examine witnesses, and the inability to elicit crucial testimony from potential witnesses. *Janecka*, 937 S.W.2d at 468.

The federal and Texas constitutions guarantee the right to counsel in criminal cases and contemplate the right to obtain paid, nonappointed counsel of the defendant's choosing. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 151–52, 126 S. Ct. 2557, 2565–66 (2006); *Gonzalez v. State*, 117 S.W.3d 831, 836–37 (Tex. Crim. App. 2003). But the right to counsel of the defendant's choosing is not absolute, and Texas courts have consistently noted that a defendant cannot wait until the day of trial to demand different counsel or to request that counsel be dismissed so that he may retain other counsel. *Gonzalez*, 117 S.W.3d at 837; *Webb v. State*, 533 S.W.2d 780, 784 (Tex. Crim. App. 1976) (explaining that an "accused's right to represent himself or select his own counsel cannot be manipulated so as to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice").

In deciding whether to grant a continuance because of the absence of the defendant's choice of counsel, the trial court should weigh the following factors: (1) the length of delay requested; (2) whether other continuances were requested and whether they were denied or granted; (3) the length of time in which the accused's counsel had to prepare for trial; (4) whether another competent attorney was prepared to try the case; (5) the balanced convenience

11

or inconvenience to the witnesses, the opposing counsel, and the trial court; (6) whether the delay was for legitimate or contrived reasons; (7) whether the case was complex or simple; (8) whether the denial of the motion resulted in some identifiable harm to the defendant; and (9) the quality of legal representation actually provided. *Ex parte Windham*, 634 S.W.2d 718, 720 (Tex. Crim. App. 1982). We must determine whether the trial court could reasonably have balanced these factors and concluded that the fair and efficient administration of justice weighed more heavily than Pickett's right to counsel of his choice. *See Greene v. State*, 124 S.W.3d 789, 794 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd).

Here, the trial court appointed Cole in May 2007, and Cole had from that time until October 2008—about a year and a half—to prepare for Pickett's trial. Pickett had expressed his concerns about Cole's representation to the trial court in the past, but although Pickett was dissatisfied with Cole by March 2008, he did not secure different counsel in the seven months from then until trial, and there was obviously no other competent attorney ready to try Pickett's case. Also, the record reflects that Pickett did not actively seek to communicate with or to hire replacement counsel from March 15, the last day he talked to the counsel that he had initially planned on hiring, until September. In September,

12

although Pickett talked to and had the means to hire a Wichita Falls attorney, Pickett did not do so.

While the record does not establish how long a continuance Pickett wanted and does not contain any previous motions for a continuance, Pickett had delayed the trial three times over the course of six months by absconding to Arkansas and forfeiting his bond. Finally, Pickett does not direct us to any portion of the record establishing that Cole's previous prosecution of him had any impact on the trial, nor does Pickett argue on appeal that Cole's assistance was ineffective or that Cole made any tactical decision before or during the trial that, if not made, could have prevented Pickett's conviction or reduced his punishment.

For all of these reasons, we hold that the trial court did not abuse its discretion by denying Pickett's oral motion for continuance to secure counsel of his choice. *See Renteria*, 206 S.W.3d at 699; *Webb*, 533 S.W.2d at 784. Thus, we overrule that portion of his only issue.

**Refusal to appoint different counsel**

Next, Pickett complains of the trial court's refusal to appoint different counsel. The code of criminal procedure authorizes the replacement of appointed counsel for good cause. *See* Tex. Code Crim. Proc. Ann. art. 26.04(j)(2) (Vernon 2009).

13

However, "[a]ppointment of new counsel is a matter solely within the discretion of the trial court," and the "trial court is under no duty to search for a counsel until an attorney is found who is agreeable to the accused." *Solis v. State*, 792 S.W.2d 95, 100 (Tex. Crim. App. 1990); *see King v. State*, 29 S.W.3d 556, 566 (Tex. Crim. App. 2000). "A defendant does not have the right to choose appointed counsel, and unless he waives his right to counsel and chooses to represent himself, or shows adequate reasons for the appointment of new counsel, he must accept court-appointed counsel." *Maes v. State*, 275 S.W.3d 68, 71 (Tex. App.—San Antonio 2008, no pet.); *see Renfro v. State*, 586 S.W.2d 496, 499–500 (Tex. Crim. App. [Panel Op.] 1979); *Trammell v. State*, 287 S.W.3d 336, 343 (Tex. App.—Fort Worth 2009, no pet.) ("Texas courts have specifically held that an indigent defendant does not have a right to the counsel of his own choosing.").

The defendant has the burden to prove that he is entitled to new appointed counsel. *Stephenson v. State*, 255 S.W.3d 652, 655–56 (Tex. App.—Fort Worth 2008, pet. ref'd) (mem. op.). Conclusory allegations of conflicts of interest, disagreements on trial strategy, and personality disputes are generally insufficient to carry the defendant's burden. *Id.*; *see Maes*, 275 S.W.3d at 71–72. When a change of appointed counsel is requested but not given, we should examine the record for whether the appointed counsel's

14

representation had a negative impact on the trial. *See Malcom v. State*, 628 S.W.2d 790, 792 (Tex. Crim. App. [Panel Op.] 1982).

Pickett asserted two reasons at trial in October 2008 for Cole's dismissal. First, Pickett said that Cole had not done enough to prepare for his defense.[2] But Pickett admitted that he had not made any contact with Cole in the seven months before the trial, so he was in a poor position to determine what preparations Cole had taken. Also, the record indicates that Cole provided an adequate, detailed defense, and Pickett has not argued otherwise. For example, Cole filed several pretrial motions, questioned potential jurors at length during voir dire, argued that some statements contained in a video of Pickett's arrest were inadmissible, asked for and was granted a running objection on a suppression issue, cross-examined Officer Stagg about his failure to follow certain procedures or preserve fingerprints during Pickett's arrest as shown in the arrest video,[3] questioned the State's forensic scientist about the true amount of methamphetamine in the substance the scientist tested, and argued

---

[2] Specifically, Pickett stated that Cole had not "done anything . . . but ask me how many years I want." Cole told the trial court that Pickett had successively rejected plea bargain offers, against Cole's advice, of two years' and five years' confinement.

[3] Pickett told the trial court before testimony began that Cole had neglected to realize the importance of the video to Pickett's defense.

for Pickett's acquittal in closing argument because of various alleged "unanswered questions."

Second, Pickett contended that Cole should have been replaced because Cole previously prosecuted him. However, Cole's prosecution of Pickett for an unrelated crime approximately a decade before the trial of this case did not create a per se conflict of interest or automatically disqualify Cole. *See* Tex. Disciplinary R. Prof'l Conduct 1.10(a), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G app. A (Vernon 2005) (indicating that a former public officer may represent a private client as long as the representation is not connected with a matter that the officer personally and substantially participated in while in office); *cf. Reed v. State*, 503 S.W.2d 775, 776 (Tex. Crim. App. 1974) (holding that an attorney who the defendant had retained in the past was not disqualified from prosecuting the defendant in an unrelated case). And Pickett's only expressed apprehension of a more than theoretical conflict of interest—regarding Cole's dual role of both questioning Pickett about and being a witness to Pickett's criminal history—never came to fruition because Pickett decided not to testify.[4] Finally, Pickett has not cited any authority supporting

---

[4] We note that any defense attorney, either appointed or retained, who previously represented a criminal defendant would also have such a dual role.

16

the notion that Cole's previous prosecution of him entitled him to different appointed counsel.

For all of these reasons, we hold that the trial court did not abuse its discretion by declining to appoint new counsel for Pickett, and we also overrule that portion of his only issue. *See King*, 29 S.W.3d at 566; *Solis*, 792 S.W.2d at 100.

**Alleged denial of right of self-representation**

Finally, Pickett argues that the trial court denied him the right to represent himself. The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel" for his defense. U.S. Const. amend. VI. The Sixth Amendment's right of counsel contains an implicit reciprocal right of self-representation. *Faretta v. California*, 422 U.S. 806, 818–22, 95 S. Ct. 2525, 2532–34 (1975); *Williams v. State*, 252 S.W.3d 353, 356 (Tex. Crim. App. 2008); *Ex parte Winton*, 837 S.W.2d 134, 135 (Tex. Crim. App. 1992).

But the right of self-representation does not attach "until it has been clearly and unequivocally asserted." *Williams*, 252 S.W.3d at 356 (quoting *Funderburg v. State*, 717 S.W.2d 637, 642 (Tex. Crim. App. 1986)); *Winton*, 837 S.W.2d at 135 (explaining that a defendant "should be allowed to so proceed so long as the assertion of his right to self-representation is

unconditional"); *see also Burton v. Collins*, 937 F.2d 131, 134 (5th Cir.) (holding that an assertion of self-representation is not clear and unequivocal when it is "an inquiry into alternatives"), *cert. denied*, 502 U.S. 1006 (1991); *Barrientes v. State*, No. 04-06-00541-CR, 2007 WL 1888378, at *1 (Tex. App.—San Antonio July 3, 2007, no pet.) (mem. op., not designated for publication) (holding that the defendant's asking, "Can I represent myself?" was not a clear and unequivocal invocation of his right of self-representation and that without such an invocation, "the trial court has no duty to make further inquiry" to that right). A defendant's alleged assertion of his right to self-representation must be examined in the context of the record. *See DeGroot v. State*, 24 S.W.3d 456, 458 (Tex. App.— Corpus Christi 2000, no pet.).

Pickett's only expression regarding self-representation was his question on the day of trial, "May I ask, Your Honor, if I choose to represent myself how long I would have to prepare a defense?" This expression cannot be viewed as a clear and unequivocal invocation of his self-representation right; the expression is only a question—an inquiry into alternatives—that is expressly conditional because it begins with the word "if." After the trial judge then spoke extensively about the possible pitfalls of self-representation and asked Pickett if he had anything left to say, Pickett answered, "No, sir."

18

Although Pickett argues in his reply brief that he is "not versed in the archaic language of the law," there is nothing archaic or complex about saying, "I want to represent myself." And Pickett has not directed us to any authority supporting his position that the trial court had a duty to explain to him that an invocation of his self-representation right had to be clear and unequivocal.

Finally, Pickett argues that under *Faretta*, he should have been made aware of the dangers and disadvantages of self-representation.[5] *See Faretta*, 422 U.S. at 835, 95 S. Ct. at 2541. However, he has not cited any authority holding that the trial court has a duty in that regard when the right of self-representation has not been adequately invoked, and our review of authority indicates otherwise. *See Williams*, 252 S.W.3d at 356 (explaining that "*[o]nce asserted,* under *Faretta*, the trial judge must inform the defendant about "the dangers and disadvantages of self-representation") (emphasis added); *Fernandez v. State*, 283 S.W.3d 25, 28 (Tex. App.—San Antonio 2009, no pet.) (stating that "[w]hen a defendant clearly and unequivocably asserts his right to represent himself, the trial court must admonish the defendant about the dangers and disadvantages of self-representation").

---

[5] As the excerpt from the record that is set forth above indicates, the trial court did give Pickett some admonishments about the difficulties of self-representation.

We hold that the trial court did not violate Pickett's constitutional right of self-representation because Pickett did not invoke that right. Thus, we overrule the final portion of Pickett's sole issue.

### Conclusion

Having overruled Pickett's only issue, we affirm the trial court's judgment.

TERRIE LIVINGSTON
JUSTICE

PANEL: LIVINGSTON, WALKER, and MCCOY, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: October 8, 2009

20