COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-08-439-CR

 

 

TRENTON DEWAYNE PICKETT                                               APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM THE 97TH
DISTRICT COURT OF MONTAGUE COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

Introduction








Appellant Trenton Dewayne Pickett appeals his
conviction for possessing more than four but less than two hundred grams of
methamphetamine.  See Tex.
Health & Safety Code Ann. '' 481.102(6),
481.115(a), (d) (Vernon Supp. 2009).  In
one issue, he contends that the trial court violated his constitutional rights
by failing to appoint counsel different than the counsel it originally
appointed, denying him an opportunity to retain different counsel, and
disallowing him to represent himself.  We
affirm.

Background Facts 

Just before ten o=clock on
the morning of November 10, 2006, Bowie Police Department Officer Kent Stagg
saw Pickett as he was sleeping or was unconscious in a pickup.  Officer Stagg knocked on the pickup=s door
frame, and Pickett awoke and began shaking and sweating.

As Pickett stepped out of the pickup with items
in his hands, Officer Stagg saw a glass pipe fall on the pickup=s
floor.  Because Officer Stagg recognized
the pipe as drug paraphernalia, he asked Pickett to drop the items he was
carrying into the pickup=s bed, and he arrested
Pickett.  After the arrest, Officer Stagg
searched the items that Pickett had dropped into the pickup=s
bed.  Inside a ball of tape, Officer
Stagg found crystalized methamphetamine inside a vile and a baggie.

A Montague County grand jury indicted Pickett for
possessing the methamphetamine.  In May
2007, the trial court appointed Tim Cole, a former district attorney, to
represent Pickett.  After the parties
filed various pretrial documents, Pickett=s trial
began in October 2008.








Pickett pled not guilty, but the jury found him
guilty.  After the State presented
evidence regarding Pickett=s
previous drug-related felony conviction and his mother briefly testified, the
jury assessed punishment at twenty years=
confinement.  Pickett timely filed his
notice of appeal.

Pickett=s Choice
of Counsel and the Right of Self-Representation

On March 5, 2008, a date that Pickett=s case
was set for trial, the following exchange occurred between Pickett, Cole, and
the trial judge after Pickett and Cole expressed their disagreement about
whether Pickett should accept the State=s plea
bargain offer:

[MR. COLE]:  . . . [W]e have a
fundamental disagreement about the strategy that you should proceed with in
this case, do we not?

 

[THE DEFENDANT]:  Yes, we do.

 

[MR. COLE]:  In fact, in the
very beginning, you had a fundamental mistrust of me representing you because I
was the prosecutor who sent you to prison in the last case you were convicted
in; is that true?

 

[THE DEFENDANT]:  That=s correct.

 

[MR. COLE]:  Now, are you
wanting to tell the Judge something about that ‑‑ your feelings
with regard to that and request that he give you a new attorney or give you
time to hire an attorney?

 

[THE DEFENDANT]:  Yes, I would
like to.

 

[MR. COLE]:  Would you explain
that to him?








[THE DEFENDANT]:  I don=t feel that he=s representing me the way
that I need to be represented and I don=t trust him beings he was the prosecutor in a
case back in >98 that I made a plea on.

 

. . . .

 

[MR. COLE]:  Do you have the
ability to hire an attorney?

 

[THE DEFENDANT]:  I should have
now.  I=ve been working.

 

[MR. COLE]:  So you=re telling the Judge that
you want to hire your own attorney?

 

[THE DEFENDANT]:  Yes, I do.

 

. . . .

 

[THE COURT]:  How long have you
had the ability to hire another attorney?

 

[THE DEFENDANT]:  About a week
and a half.

 

[THE COURT]:  And the reason you
haven=t hired an attorney as of
this date then is, what?

 

[THE DEFENDANT]:  I still haven=t made it to a scrap yard
with the cars that I=ve gathered up, but I
have sold them to him.

 








[MR. COLE]:  Judge, just for
your own knowledge, I ‑‑ Mr. Pickett has been aware that this was
the top case on the jury docket since last week.  I made it very clear to him last week.  We reviewed the evidence, in detail, in
this case and he remains deeply mistrustful of me and everything that I tell
him.  There is a deep, deep mistrust from
him towards me and I think it stems from the fact that I was, in deed [sic],
the district attorney in his prior case. 
So having said that, it=s up to, obviously, the Judge=s discretion as to
whether you allow me out of the case at this point, but it=s clear there=s going to continue to be
a problem between myself and Mr. Pickett throughout the trial.  So with that, I=ll leave it to your
discretion.

 

[THE COURT]:  Okay.  And what attorney do you want to hire, Mr.
Pickett?

 

[THE DEFENDANT]:  I=m not sure.  He=s out of Wichita. 
A friend of mine used him.

 

[THE COURT]:  Who is it?

 

[THE DEFENDANT]:  I'm not sure
of his name yet, but I will have one.

 

. . . .

 

[THE COURT]:  Okay.  All right. 
I=m going to let you hire
an attorney.  But if you don=t hire an attorney, Mr.
Cole [has] still been appointed to represent you.  You need to hire the attorney.  You need to hire them and have them
notify both the district attorney and the district clerk that they=re representing you.  And you are set for trial ‑‑
you don=t have to be back next
week, but you=re ordered to be here at
9 a.m. on April 22, 2008, for jury trial and you need to let your lawyer know
when you=re going to be here.

And let me explain this:  If you
don=t hire a lawyer, you=re still ordered to be
here on April the 22nd and Mr. Cole will be representing you at the jury trial
then.

 

[THE DEFENDANT]:  Yes, sir.

 

[THE COURT]:  Any questions about that?

 

[THE DEFENDANT]:  No, sir.

 

More than seven months later, after Pickett failed to reappear for his
jury trial and forfeited his bond, the following colloquy took place:








[THE COURT]:  All right.  Mr. Pickett, we=re on the record.  Now, is there something you want to say?

 

[THE DEFENDANT]:  Yes, sir.  I still don=t wish to have Tim Cole
represent me here as I did in the past for the same reasons.  He hasn=t done anything towards my defense but ask me how
many years I want.  And he was the
prosecuting attorney in a previous conviction of mine on a marijuana charge in >98.  And if I=m put on the stand and I=m going to be questioned
about my past record comes in light, which I want it to, he=ll be a witness to my defense.  But I don=t trust him. 
He [has not] done anything to me and I have begged with the Court to let
me have a different defense attorney.

 

[THE COURT]:  Mr. Pickett, let
me ask you a couple questions.  When is
the last time ‑‑ the last time you were in court was on March the
5th and you said you were going to hire an attorney?

 

[THE DEFENDANT]:  Yes, sir.

 

[THE COURT]:  It is now October
the 21st.  Have you hired an attorney?

 

[THE DEFENDANT]:  The one I was
going to hire increased his price on me yesterday.

 

. . . .

 

[THE COURT]:  When is the last
time you talked to [the attorney who Pickett was going to hire] before
yesterday?

 

[THE DEFENDANT]:  March 15.

 

[THE COURT]:  Let=s see, Mr. Pickett, you
also failed to appear for the jury trials that were set April 22nd.  You failed to appear May 6th.  You failed to appear May 13th.  And you ‑‑ so ‑‑

 

[THE DEFENDANT]:  I didn=t know nothing about May
13th.








[THE COURT]:  Oh, yeah, you did
because you had ‑‑ when you got the March jury notice, it also had
the subsequent dates in there too. . . . 
Now, Mr. Pickett, you tell me one reason why you=ve had since March 5th to
hire an attorney and you haven=t done it? 
Why?  You haven=t taken any steps ‑‑
actually, you didn=t take any steps until
you were rearrested.  The only reason you=re here today is because
you were rearrested and in jail; is that correct?

 

[THE DEFENDANT]:  Yes, sir.

 

. . . .

 

[THE COURT]:  Mr. Pickett, do
you remember what I told you back in March?

 

[THE DEFENDANT]:  Yes, sir.

 

[THE COURT]:  Hire an attorney
or your appointed counsel is going to represent you.

 

[THE DEFENDANT]:  Yes, sir.  And I honestly thought I had the means to
hire that attorney until yesterday when he told me he increased his price
$10,000.  The only person I=ve had since I=ve been locked up to be
able to help me has been my mother and she=s been sick.

 

. . . .

 

[THE COURT]:  And you=ve criticized Mr. Cole
about not preparing to defend you in the case; is that correct?

 

[THE DEFENDANT]:  Yes, sir.

 

[THE COURT]:  How many times
since March have you contacted Mr. Cole to give him any information about your
case?

 








[THE DEFENDANT]:  None, because
I haven=t wanted him as my
attorney.  I didn=t want him.  I didn=t figure I needed to give him any information. .
. .

 

. . . .     

 

[THE COURT]:  Well, Mr. Pickett,
I=m afraid that a good deal
of the problem you=ve appeared to have had
here appear to be, maybe, of your own making. 
So I=m ‑‑ you've
had six months to hire an attorney?

 

[THE DEFENDANT]:  And, yes, sir,
I have.  But I wasn=t ‑‑

 

[THE COURT]:  And you haven=t done it.  And you=ve missed ‑‑ basically, skipped out
on three jury weeks?

 

. . .
.

 

[THE DEFENDANT]:  And the reason
being, sir, is because I didn=t have the money at the time for another attorney
and I didn=t want him for my
attorney.

 

[THE COURT]:  I don=t believe that ‑‑
well, nevertheless, we=re going to go ahead and
proceed to trial today.  If the State
would read the indictment.

 

[THE DEFENDANT]:  May I ask,
Your Honor, if I choose to represent myself how long I would have to prepare a
defense?

 








[THE COURT]:  About ‑‑
you=ve had six months.  The jury panel is going to be coming in here
in five minutes.  You are not delaying
the trial any longer, Mr. Pickett.  You
have been set three times.  You have
voluntarily absented yourself from the courtroom.  And if you represent yourself, there are warnings
I will go over with you, but we will proceed to trial today.  And if you represent yourself, you will be
held to the same standards as attorneys are. 
I will not be able to help you. 
Any objections have to have the same basis that they would if they were
made by an attorney.  You will be
held to the same standards as an attorney. 
It would put you at a significant disadvantage to represent
yourself. . . .

 

. . . .

 

[THE COURT]:  . . .  [I]f you represent yourself, that might be a
mistake you made there too.  I am trying
to let you know that it is, generally, a significant problem ‑‑ let
me back up.  It is difficult to represent
oneself in a case.  Even if one is a
lawyer, it is difficult to represent yourself in a case whether it is a civil
case or a criminal case.  And I want to
point out something else to you that you may not know.  The same day back in March that you didn=t want Mr. Cole as an
attorney, there was a Mr. Adams that had Mr. Cole as the attorney and didn=t want him either.  He went to trial and Mr. Cole got him a
mistrial during the trial itself.  I=m not saying it will
happen in this case.  I don=t know.  But just because somebody doesn=t want somebody as their
attorney is not an excuse for getting rid of a court‑appointed
attorney.  And you have had time ‑‑
you have had time to hire an attorney.

. . .  So is there anything else
you want to put on the record then?

 

[THE DEFENDANT]:  No, sir.

 








In the title of his only issue, Pickett contends
that the trial court committed reversible error by Afailing
to conduct a thorough hearing on [his] request to have new counsel appointed,
to have an opportunity to retain counsel, or to represent himself and by
refusing to allow [him] to represent himself in the trial in contravention of
[his] constitutional rights[.]@  Thus, although the majority of Pickett=s legal
argument in his brief concerns the right of self-representation, we construe
Pickett=s issue
as challenging (1) the trial court=s denial
of his request for more time to retain counsel, (2) the trial court=s
refusal to appoint different counsel, and (3) the trial court=s
alleged denial of his right of self-representation.

Denial of additional time to retain different counsel

Pickett=s
request for more time to retain different counsel (which, of course, would have
again delayed the trial=s proceeding) and his appellate
complaint involving the denial of that request is a challenge to the denial of
a motion for a continuance.  See
Coleman v. State, 188 S.W.3d 708, 722B24 (Tex.
App.CTyler
2005, pet. ref=d) (construing an appellant=s
complaint that he did not want to go to trial until he was represented by an
attorney of his choice as a challenge to the denial of a continuance), cert.
denied, 549 U.S. 999 (2006).  The
denial of a motion for continuance is within the sound discretion of the trial
court, and our review of the denial of the motion is limited to whether the
trial court abused that discretion.  Renteria
v. State, 206 S.W.3d 689, 699 (Tex. Crim. App. 2006); Janecka v. State,
937 S.W.2d 456, 468 (Tex. Crim. App. 1996), cert. denied, 522 U.S. 825
(1997); Williams v. State, 172 S.W.3d 730, 733 (Tex. App.CFort
Worth 2005, pet. ref=d).








A defendant must show Aspecific
prejudice to his defense@ to establish that the trial
court abused its discretion by refusing to grant a continuance.  Renteria, 206 S.W.3d at 699; Janecka,
937 S.W.2d at 468.  Examples of specific
prejudice include unfair surprise, an inability to effectively cross‑examine
witnesses, and the inability to elicit crucial testimony from potential
witnesses.  Janecka, 937 S.W.2d at
468.

The federal and Texas constitutions guarantee the
right to counsel in criminal cases and contemplate the right to obtain paid,
nonappointed counsel of the defendant=s
choosing.  United States v. Gonzalez‑Lopez,
548 U.S. 140, 151B52, 126 S. Ct. 2557, 2565B66
(2006); Gonzalez v. State, 117 S.W.3d 831, 836B37 (Tex.
Crim. App. 2003).  But the right to
counsel of the defendant=s choosing is not absolute, and
Texas courts have consistently noted that a defendant cannot wait until the day
of trial to demand different counsel or to request that counsel be dismissed so
that he may retain other counsel.  Gonzalez,
117 S.W.3d at 837; Webb v. State, 533 S.W.2d 780, 784 (Tex. Crim. App.
1976) (explaining that an Aaccused=s right
to represent himself or select his own counsel cannot be manipulated so as to
obstruct the orderly procedure in the courts or to interfere with the fair
administration of justice@).








In deciding whether to grant a continuance
because of the absence of the defendant=s choice
of counsel, the trial court should weigh the following factors:  (1) the length of delay requested; (2)
whether other continuances were requested and whether they were denied or
granted; (3) the length of time in which the accused=s
counsel had to prepare for trial; (4) whether another competent attorney was
prepared to try the case; (5) the balanced convenience or inconvenience to the
witnesses, the opposing counsel, and the trial court; (6) whether the
delay was for legitimate or contrived reasons; (7) whether the case was complex
or simple; (8) whether the denial of the motion resulted in some identifiable
harm to the defendant; and (9) the quality of legal representation actually
provided.  Ex parte Windham, 634
S.W.2d 718, 720 (Tex. Crim. App. 1982). 
We must determine whether the trial court could reasonably have balanced
these factors and concluded that the fair and efficient administration of
justice weighed more heavily than Pickett=s right
to counsel of his choice.  See Greene
v. State, 124 S.W.3d 789, 794 (Tex. App.CHouston
[1st Dist.] 2003, pet. ref=d).








Here, the trial court appointed Cole in May 2007,
and Cole had from that time until October 2008Cabout a
year and a halfCto prepare for Pickett=s
trial.  Pickett had expressed his
concerns about Cole=s representation to the trial
court in the past, but although Pickett was dissatisfied with Cole by March
2008, he did not secure different counsel in the seven months from then until
trial, and there was obviously no other competent attorney ready to try Pickett=s
case.  Also, the record reflects that
Pickett did not actively seek to communicate with or to hire replacement
counsel from March 15, the last day he talked to the counsel that he had
initially planned on hiring, until September. 
In September, although Pickett talked to and had the means to hire a
Wichita Falls attorney, Pickett did not do so.

While the record does not establish how long a
continuance Pickett wanted and does not contain any previous motions for a
continuance, Pickett had delayed the trial three times over the course of six
months by absconding to Arkansas and forfeiting his bond.  Finally, Pickett does not direct us to any
portion of the record establishing that Cole=s
previous prosecution of him had any impact on the trial, nor does Pickett argue
on appeal that Cole=s assistance was ineffective or
that Cole made any tactical decision before or during the trial that, if not
made, could have prevented Pickett=s
conviction or reduced his punishment.

For all of these reasons, we hold that the trial
court did not abuse its discretion by denying Pickett=s oral
motion for continuance to secure counsel of his choice.  See Renteria, 206 S.W.3d at 699; Webb,
533 S.W.2d at 784.  Thus, we overrule
that portion of his only issue.

Refusal to appoint different counsel

Next, Pickett complains of the trial court=s
refusal to appoint different counsel. 
The code of criminal procedure authorizes the replacement of appointed
counsel for good cause.  See Tex.
Code Crim. Proc. Ann. art. 26.04(j)(2) (Vernon 2009).








However, A[a]ppointment
of new counsel is a matter solely within the discretion of the trial court,@ and the
Atrial
court is under no duty to search for a counsel until an attorney is found who
is agreeable to the accused.@  Solis v. State, 792 S.W.2d 95, 100
(Tex. Crim. App. 1990); see King v. State, 29 S.W.3d 556, 566 (Tex.
Crim. App. 2000).  AA
defendant does not have the right to choose appointed counsel, and unless he
waives his right to counsel and chooses to represent himself, or shows adequate
reasons for the appointment of new counsel, he must accept court‑appointed
counsel.@  Maes v. State, 275 S.W.3d 68, 71
(Tex. App.CSan Antonio 2008, no pet.); see
Renfro v. State, 586 S.W.2d 496, 499B500
(Tex. Crim. App. [Panel Op.] 1979); Trammell v. State, 287 S.W.3d 336,
343 (Tex. App.CFort Worth 2009, no pet.) (ATexas
courts have specifically held that an indigent defendant does not have a right
to the counsel of his own choosing.@).








The defendant has the burden to prove that he is
entitled to new appointed counsel.  Stephenson v.
State, 255 S.W.3d 652, 655B56 (Tex.
App.CFort
Worth 2008, pet. ref=d) (mem. op.).  Conclusory allegations of conflicts of interest,
disagreements on trial strategy, and personality disputes are generally
insufficient to carry the defendant=s
burden.  Id.; see Maes, 275
S.W.3d at 71B72.  When a change of appointed counsel is
requested but not given, we should examine the record for whether the appointed
counsel=s
representation had a negative impact on the trial.  See Malcom v. State, 628 S.W.2d 790,
792 (Tex. Crim. App. [Panel Op.] 1982).








Pickett asserted two reasons at trial in October
2008 for Cole=s dismissal.  First, Pickett said that Cole had not done
enough to prepare for his defense.[2]  But Pickett admitted that he had not made any
contact with Cole in the seven months before the trial, so he was in a poor
position to determine what preparations Cole had taken.  Also, the record indicates that Cole provided
an adequate, detailed defense, and Pickett has not argued otherwise.  For example, Cole filed several pretrial
motions, questioned potential jurors at length during voir dire, argued that
some statements contained in a video of Pickett=s arrest
were inadmissible, asked for and was granted a running objection on a
suppression issue, cross-examined Officer Stagg about his failure to follow
certain procedures or preserve fingerprints during Pickett=s arrest
as shown in the arrest video,[3]
questioned the State=s forensic scientist about the
true amount of methamphetamine in the substance the scientist tested, and
argued for Pickett=s acquittal in closing argument
because of various alleged Aunanswered
questions.@








Second, Pickett contended that Cole should have
been replaced because Cole previously prosecuted him.  However, Cole=s
prosecution of Pickett for an unrelated crime approximately a decade before the
trial of this case did not create a per se conflict of interest or
automatically disqualify Cole.  See
Tex. Disciplinary R. Prof=l Conduct 1.10(a), reprinted
in Tex. Gov=t Code Ann., tit. 2, subtit. G
app. A (Vernon 2005) (indicating that a former public officer may represent a
private client as long as the representation is not connected with a matter
that the officer personally and substantially participated in while in office);
cf. Reed v. State, 503 S.W.2d 775, 776 (Tex. Crim. App. 1974) (holding
that an attorney who the defendant had retained in the past was not
disqualified from prosecuting the defendant in an unrelated case).  And Pickett=s only
expressed apprehension of a more than theoretical conflict of interestCregarding
Cole=s dual
role of both questioning Pickett about and being a witness to Pickett=s
criminal historyCnever came to fruition because
Pickett decided not to testify.[4]  Finally, Pickett has not cited any authority
supporting the notion that Cole=s
previous prosecution of him entitled him to different appointed counsel.

For all of these reasons, we hold that the trial
court did not abuse its discretion by declining to appoint new counsel for
Pickett, and we also overrule that portion of his only issue.   See
King, 29 S.W.3d at 566; Solis, 792 S.W.2d at 100.

Alleged denial of right of self-representation

Finally, Pickett argues that the trial court
denied him the right to represent himself. 
The Sixth Amendment guarantees that A[i]n all
criminal prosecutions, the accused shall enjoy the right . . . to have the
Assistance of Counsel@ for his defense.  U.S. Const. amend. VI.  The Sixth Amendment=s right
of counsel contains an implicit reciprocal right of self-representation.  Faretta v. California, 422 U.S. 806, 818B22, 95
S. Ct. 2525, 2532B34 (1975); Williams v. State,
252 S.W.3d 353, 356 (Tex. Crim. App. 2008); Ex parte Winton, 837 S.W.2d
134, 135 (Tex. Crim. App. 1992).








But the right of self-representation does not
attach Auntil it
has been clearly and unequivocably asserted.@  Williams, 252 S.W.3d at 356 (quoting
Funderburg v. State, 717 S.W.2d 637, 642 (Tex. Crim. App. 1986)); Winton,
837 S.W.2d at 135 (explaining that a defendant Ashould
be allowed to so proceed so long as the assertion of his right to self‑representation
is unconditional@); see also Burton v. Collins,
937 F.2d 131, 134 (5th Cir.) (holding that an assertion of self-representation
is not clear and unequivocal when it is Aan
inquiry into alternatives@), cert. denied, 502 U.S.
1006 (1991); Barrientes v. State, No. 04‑06‑00541‑CR,
2007 WL 1888378, at *1 (Tex. App.CSan
Antonio July 3, 2007, no pet.) (mem. op., not designated for publication)
(holding that the defendant=s
asking, ACan I
represent myself?@ was not a clear and unequivocal
invocation of his right of self-representation and that without such an
invocation, Athe trial court has no duty to
make further inquiry@ to that right).  A defendant=s
alleged assertion of his right to self‑representation must be examined in
the context of the record.  See DeGroot
v. State, 24 S.W.3d 456, 458 (Tex. App.C Corpus
Christi 2000, no pet.).

Pickett=s only
expression regarding self-representation was his question on the day of trial, AMay I
ask, Your Honor, if I choose to represent myself how long I would have to
prepare a defense?@ 
This expression cannot be viewed as a clear and unequivocal invocation
of his self-representation right; the expression is only a questionCan
inquiry into alternativesCthat is expressly conditional
because it begins with the word Aif.@  After the trial judge then spoke extensively
about the possible pitfalls of self-representation and asked Pickett if he had
anything left to say, Pickett answered, ANo, sir.@








Although Pickett argues in his reply brief that
he is Anot
versed in the archaic language of the law,@ there
is nothing archaic or complex about saying, AI want
to represent myself.@ 
And Pickett has not directed us to any authority supporting his position
that the trial court had a duty to explain to him that an invocation of his
self-representation right had to be clear and unequivocal.

Finally, Pickett argues that under Faretta,
he should have been made aware of the dangers and disadvantages of
self-representation.[5]
 See Faretta, 422 U.S. at 835, 95
S. Ct. at 2541.  However, he has not
cited any authority holding that the trial court has a duty in that regard when
the right of self-representation has not been adequately invoked, and our
review of authority indicates otherwise. 
See Williams, 252 S.W.3d at 356 (explaining that A[o]nce
asserted, under Faretta, the trial judge must inform the defendant about Athe
dangers and disadvantages of self‑representation@)
(emphasis added); Fernandez v. State, 283 S.W.3d 25, 28 (Tex. App.CSan Antonio
2009, no pet.) (stating that A[w]hen a
defendant clearly and unequivocably asserts his right to represent himself, the
trial court must admonish the defendant about the dangers and disadvantages of
self‑representation@).








We hold that the trial court did not violate
Pickett=s
constitutional right of self-representation because Pickett did not invoke that
right.  Thus, we overrule the final
portion of Pickett=s sole issue.

Conclusion

Having overruled Pickett=s only
issue, we affirm the trial court=s
judgment.

 

TERRIE
LIVINGSTON

JUSTICE

 

PANEL:  LIVINGSTON, WALKER, and MCCOY, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  October 8, 2009











[1]See Tex. R. App. P. 47.4.





[2]Specifically, Pickett
stated that Cole had not Adone anything . . . but
ask me how many years I want.@  Cole told
the trial court that Pickett had successively rejected plea bargain offers,
against Cole=s advice, of two years= and five years= confinement.





[3]Pickett told the trial
court before testimony began that Cole had neglected to realize the importance
of the video to Pickett=s defense.





[4]We note that any defense
attorney, either appointed or retained, who previously represented a criminal
defendant would also have such a dual role.





[5]As the excerpt from the
record that is set forth above indicates, the trial court did give Pickett some
admonishments about the difficulties of self-representation.